UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No.: 14-211 (EGS) |
| v. : | |
| : | **FILED** |
| INTELLIGENT DECISIONS, INC. : | |
| : | JAN 1 5 2015 |
| Defendant. : | |
| : | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

### DEFERRED PROSECUTION AGREEMENT

Defendant Intelligent Decisions, Inc. (the "Company"), by its undersigned representatives, pursuant to authority granted by the Company's Board of Directors, and the Criminal Division of the Office of the United States Attorney for the District of Columbia (the "Office") enter into this deferred prosecution agreement (the "Agreement"). The terms and conditions of this Agreement are as follows:

### Criminal Information and Acceptance of Responsibility

1. The Company acknowledges and agrees that the Office will file the attached one-count criminal Information in the United States District Court for the District of Columbia charging the Company with felony Gratuity, in violation of 18 U.S.C. § 201(c)(1)(A). In so doing, the Company: (a) knowingly waives its right to indictment on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, 18 U.S.C. § 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives for purposes of this Agreement and any charges by the United States arising out of the conduct described in the attached Statement of Facts any objection with respect to venue and consents to

1

the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Columbia.

2.   The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts attached hereto as Attachment A and incorporated by reference into this Agreement, and that the allegations described in the Information and the facts described in Attachment A are true and accurate. Should the Office pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the Statement of Facts in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statement of Facts at any such proceeding.

### Term of the Agreement

3.   This Agreement is effective for a period beginning on the date on which the Information is filed and ending two (2) years from that date (the "Term"). The Company agrees, however, that, in the event the Office determines, in its sole discretion, that the Company has knowingly violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the Office, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Office's right to proceed as provided in Paragraphs 13 through 15 below. Any extension of the Agreement extends all terms of this Agreement for an equivalent period. Conversely, in the event the Office finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for an extension and that the other provisions of this Agreement have been satisfied, the Term of the Agreement may be terminated early.

**Relevant Considerations**

4. The Office enters into this Agreement based on the individual facts and circumstances presented by this case and the Company. Among the factors considered were the following: (a) the Company has cooperated, including conducting an internal investigation, voluntarily making employees available for interviews, and collecting, analyzing, and organizing evidence and information for the Office; (b) the Company has committed to enhance its compliance program and internal controls; and (c) the Company has agreed to continue to cooperate with the Office in any ongoing investigation of the conduct of the Company and its officers, directors, employees, agents, and consultants relating to possible violations under investigation by the Office as provided in Paragraph 5 below.

**Future Cooperation and Disclosure Requirements**

5. The Company shall cooperate fully with the Office in any and all matters relating to the conduct described in this Agreement and Attachment A and other conduct under investigation by the Office at any time during the Term of this Agreement, subject to applicable law and regulations, until the date upon which all investigations and prosecutions arising out of such conduct are concluded, whether or not those investigations and prosecutions are concluded within the term specified in paragraph 3. At the request of the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies in any investigation of the Company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and Attachment A and other conduct under investigation by the Office at any time during the Term of this Agreement. The Company agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a. The Company shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Company has any knowledge or about which the Office may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Office, upon request, any document, record or other tangible evidence about which the Office may inquire of the Company.

b. Upon request of the Office, the Company shall designate knowledgeable employees, agents, or attorneys to provide to the Office the information and materials described in Paragraph 5(a) above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

c. The Company shall use its best efforts to make available for interviews or testimony, as requested by the Office, present or former officers, directors, employees, agents, and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d. With respect to any information, testimony, documents, records, or other tangible evidence provided to the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental

authorities, including United States authorities and those of a foreign government, of such materials as the Office, in its sole discretion, shall deem appropriate.

6. In addition to the obligations in Paragraph 5, during the Term of the Agreement, should the Company learn of credible evidence or allegations of possible corrupt payments to public officials or other government contractors, the Company shall promptly report such evidence or allegations to the Office.

### **Payment of Monetary Penalty**

7. The Office and the Company agree that application of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

    a. The 2013 USSG are applicable to this matter.

    b. <u>Offense Level</u>. Based upon USSG § 2C1.2, the total offense level is 17, calculated as follows:

| | | |
|---|---|---|
| (a)(2) | Base Offense Level | 9 |
| (b)(1) | More than One Gratuity | +2 |
| (b)(2) | Value of benefit received more than $30,000 | +6 |
| **TOTAL** | | 17 |

    c. <u>Base Fine</u>. Based upon USSG § 8C2.4(a)(1), the base fine is $250,000 (the fine indicated in the Offense Level Fine Table)

    d. <u>Culpability Score</u>. Based upon USSG § 8C2.5, the culpability score is 6, calculated as follows:

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(3) | the organization had 200 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense | +3 |

5

  (g)(2) The organization fully cooperated in the investigation, and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct   -2

  **TOTAL**    6

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $250,000 |
| Multipliers | 1.2 (min) / 2.4 (max) |
| Fine Range | $300,000 / $600,000 |

The Company agrees to pay a monetary penalty in the amount of $300,000 to the United States Treasury within ten (10) days of the filing of the Information. The Company and the Office agree that this fine is appropriate given the facts and circumstances of this case. The $300,000 penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Office that $300,000 is the maximum penalty that may be imposed in any future prosecution, and the Office is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Office agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment. The Company acknowledges that no United States tax deduction may be sought in connection with the payment of any part of this $300,000 penalty.

## Conditional Release from Liability

  8. Subject to Paragraphs 13 through 15, the Office agrees, except as provided herein, that it will not bring any criminal or civil case against the Company relating to any of the

conduct described in the Statement of Facts, attached hereto as Attachment A, or the criminal information filed pursuant to this Agreement. The Office, however, may use any information related to the conduct described in the attached Statement of Facts against the Company: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

  a. This Agreement does not provide any protection against prosecution for any future conduct by the Company.

  b. In addition, this Agreement does not provide any protection against prosecution of any present or former officer, director, employee, shareholder, agent, consultant, contractor, or subcontractor of the Company for any violations committed by them.

<b><u>Corporate Compliance Program</u></b>

  9. The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of 18 U.S.C. § 201 and other applicable anti-corruption laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with public officials or other activities carrying a high risk of corruption.

  10. In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with anti-

corruption laws. If necessary and appropriate, the Company will adopt new or modify existing internal controls, policies, and procedures in order to ensure that the Company maintains: (a) a system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) rigorous anti-corruption compliance code, standards, and procedures designed to detect and deter violations of anti-corruption laws.

## Deferred Prosecution

11. In consideration of: (a) the past and future cooperation of the Company described in Paragraphs 5 and 6 above; (b) the Company's payment of a criminal penalty of $300,000; and (c) the Company's implementation and maintenance of remedial measures as described in Paragraphs 9 and 10 above, the Office agrees that any prosecution of the Company for the conduct set forth in the attached Statement of Facts, and for the conduct that the Company disclosed to the Office prior to the signing of this Agreement, be and hereby is deferred for the Term of this Agreement.

12. The Office further agrees that if the Company fully complies with all of its obligations under this Agreement, the Office will not continue the criminal prosecution against the Company described in Paragraphs 1 and 2 and, at the conclusion of the Term, this Agreement shall expire. Within thirty (30) days of the Agreement's expiration, the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agrees not to file charges in the future against the Company based on the conduct described in this Agreement and Attachment A.

## Breach of the Agreement

13. If, during the Term of this Agreement, the Company (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false,

8

incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to maintain a compliance program as set forth in Paragraphs 9 and 10 of this Agreement; or (e) otherwise fails specifically to perform or to fulfill completely each of the Company's obligations under the Agreement, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including, but not limited to, the charge in the Information described in Paragraph 1, which may be pursued by the Office in the U.S. District Court for the District of Columbia or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Office's sole discretion. Any such prosecution may be premised on information provided by the Company. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

14. In the event the Office determines that the Company has breached this Agreement, the Office agrees to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, the Company shall have the opportunity to respond to the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to

address and remediate the situation, which explanation the Office shall consider in determining whether to pursue prosecution of the Company.

15. In the event that the Office determines that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Office or to the Court, including the attached Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer, or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Office.

16. The Company acknowledges that the Office has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

17. No later than 90 days prior to the expiration of the period of deferred prosecution specified in this Agreement, the Company, by the Chief Executive Officer of the Company and

the Chief Financial Officer of the Company, will certify to the Department that the Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement. Such certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Sale or Merger of Company

18. Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, the Company agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

### Public Statements by Company

19. The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 1 and 2 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Office. If the Office determines that a public

statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification. The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

20. The Company agrees that if it, or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Office and the Company; and (b) whether the Office has any objection to the release.

21. The Office agrees, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation. By agreeing to provide this information to such authorities, the Office is not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by such authorities.

**Limitations on Binding Effect of Agreement**

22. This Agreement is binding on the Company and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

### Notice

23. Any notice to the Office under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed Chief – Fraud and Public Corruption Section, Criminal Division, U.S. Attorney's Office for the District of Columbia, 555 Fourth Street, N.W., Washington, D.C. 20530. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Intelligent Decisions, Inc., 21445 Beaumeade Circle, Ashburn, VA, Attn: President. Notice shall be effective upon actual receipt by the Office or the Company.

### Complete Agreement

24. This Agreement sets forth all the terms of the agreement between the Company and the Office. No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, the attorneys for the Company and a duly authorized representative of the Company.

**AGREED:**

**FOR INTELLIGENT DECISIONS, INC.:**

Date: <u>October 6, 2014</u>     By: _____
Harry L. Martin, Jr.
President & Chief Executive Officer

Date: 10/6/14     By: _____
Paul F. Enzinna
Brown Rudnick LLP

**FOR THE OFFICE OF THE UNITED STATES ATTORNEY**
**FOR THE DISTRICT OF COLUMBIA:**

RONALD C. MACHEN JR.
United States Attorney

Date: 10/6/2014     BY: _____
Bryan Seeley
Michael K. Atkinson
Assistant United States Attorneys
United States Attorney's Office for the
District of Columbia

14

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Intelligent Decisions, Inc. (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the President and Chief Executive Officer for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: _____

By: _____
Intelligent Decisions, Inc.
Harry I. Martin, Jr.
President & Chief Executive Officer

## CERTIFICATE OF COUNSEL

I am counsel for Intelligent Decisions, Inc. (the "Company") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the President and Chief Executive Officer of the Company. I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: 3 OCTOBER 2014

By: _____
Paul F. Enzinna
Brown Rudnick LLP
Counsel for Intelligent Decisions, Inc.